Gaston, Judge.
 

 This bill was filed on the 11th of April, 1837, in the Court of Equity for the County of Caswell, by Lucy Griffin, against James Pleasant, the administrator with the will annexed of William Pleasant, the elder, John Pleasant, Dolly Pleasant, and others, the next of kin of the said William. The plaintiff chafges, in her bill, that in the year 1811, a boy slave was born, the property of the said William, to which was given the name of Wesley; and this boy was, by the said William, and under a parol gift, put into the possession of the plaintiff, the daughter of the said William, and then the wife of William Griffin; that in the year 1817, her husband removed with his family from the County of Caswell to
 
 the County of Rockingham,
 
 carrying with
 
 him the
 
 said negro boy; that it being feared that the said boy might be seized for her husband’s debts, he was, by the agreement of the plaintiff and her brother John, one of the defendants, carried back to her father’s, in Caswell county; and that soon thereafter, her father executed and delivered to her said brother John, a deed of gift or bill of sale of the said boy, or other sufficient instrument to pass title, the precise nature whereof she knows not, whereby the said boy was conveyed, either directly to her, or to the said John, as a trustee for her sole and separate use; that her sister Dolly, one of the defendants,
 
 *153
 
 was a subscribing witness to the said instrument; and that the said instrument was deposited by the said John, after its delivery, in his chest, at his father’s house, where he and all the other defendants, who were then unmarried, resided. The bill further sets forth that the plaintiff’s husband after-wards died; and that subsequently, in the year 1836, her said father died, having previously made a last will and testament, which, since his death, was duly admitted to probate; and, the executor therein’ named being dead, administration with the will annexed was granted to her brother,- the defendant, James. The plaintiff further charges, that on the 20th of September, 1836, since the death of the testator, the defendant John executed unto her a deed, wherein he recites that a deed had been made by his father, transferring to him the said slave in trust for the plaintiff, and whereby the 'said John conveys unto her the said slave, and all his the said John’s interest therein. The plaintiff then complains that subsequently to this conveyance, and while she was in the quiet possession of Wesley, the defendants, James and William, tortiously took him from her, under pretence that she-had no title; and shews that thereupon she instituted her ac-tion of replevin against them, in the Superior Court of Law of Caswell county, by a writ returnable to the last term of said Court; that the said James and Wiliiam, upon the said writ being executed, delivered to the sheriff their bond, with surety, payable to the plaintiff, conditioned as the law directs; for the performance of the final judgment in the said action; and thereupon were permitted to retain, and yet do retain, the' said slave. The plaintiff charges that she has applied to the said John, and to the other defendants, who resided with her father at his death, for the deed so executed by her father to-the said John, to deliver the same to her, in order that it-might be perfected by registration; but that, on various pretences, they have refused and declined to comply with this application; that the said John, admitting that the deed was' so delivered to, and deposited by, him, declares that it has-been lost or taken from his chest, without his knowledge; and that he knows not where it is; that the said Dolly admits that it was delivered to the said John, and attested by her a®
 
 *154
 
 a witness; that the defendant, William, has offered §500 to ^ghter, Martha Griffin, to get the said deed and deliver it to him; and she further charges that some of the said defendants, all of whom are interested in depriving her of this muniment of her title, either now have the deed, and fraudulently withhold it from her, or have voluntarily destroyed it, to prevent its registration, and thereby destroy her title. The prayer of the bill is, that all the defendants shall answer to the matters- charged; that they may be compelled to produce before the Court, and deliver to the plaintiff, the said deed, if yet in existence, or if the same has been destroyed, that the defendant James, the administrator as aforesaid, may be decreed to execute a conveyance of the title to her; andfor such other relief as the nature of her case requires.
 

 All the defendants, except John Rascoe, and his wife Martha-, and Martha Vaughan; who reside beyond the limits of the State, have answered the bill. As to these non-resident defendants, the bill has been taken pro
 
 confesso.
 

 The defendant John declares, in his answer, that no deed or bill of sale, or other instrument for the conveyance of
 
 title
 
 to. him or to the plaintiff of the boy Wesley, was ever executed by the deceased, to his knowledge or belief; nor does he know or believe that a parol gift was made to the plaintiff, as by her charged. He states that the boy was permitted
 
 by his
 
 father to stay with William Griffin and his wife, and went with them when they removed to Rockingham; that after this removal, this defendant’s father understood that the boy was levied upon under execution for Griffin’s debts, and procured the said John to go to Rockingham, in order to release the boy from this levy, and bring him back to him, this defendant’s father; that on that occasion, his said father executed an instrument to the said John, the precise purport of which he cannot recollect, but which he knows was intended to be a mere warrant or authority to the said John, in behalf of his father, to claim and take possession of the boy, and bring Mm back to the defendant’s father; and that, in pursuance of this authority, he went to Rockingham, found the boy Wesley in the possession of an officer, and producing his authority, de. manded the boy; but the officer refused to surrender him, un
 
 *155
 
 til the execution was satisfied; that this was done, and the
 
 boy
 
 brought back to Caswell, and delivered to his father, who repaid to him the money so advanced, and continued in the possession of the boy ever afterwards, until his death, notoriously claiming and holding the boy as his absolute property. He states that the instrument which he carried to Rocking-ham, was the only one ever executed to him by his father, in relation to the said negro; that to the best of his recollection and belief, the name of his sister, the plaintiff, was not therein mentioned; that the said instrument, after his return, was probably, as he supposes, deposited in his chest, but that what has become of it, or where it is, he is utterly ignorant, for that he paid no attention to the preservation or custody of it, since his return, not deeming it a paper of any value.
 

 This defendant admits that he did, at the request of the plaintiff, execute an instrument, which she brought to him, and which she represented had been written “ to stand against a bill of sale said to be lost;” that he was told that his attaching his signature thereto could not subject him to any cost or trouble; that he was unable to make out distinctly, being a very indifferent scholar, the contents of the paper; that it was not read over by any person present; and that, if this instrument speaks of any paper executed to him by his father, different from that set forth in his answer, it does not speak the truth, and his signature thereto has been obtained by imposition.
 

 The defendant, Dolly Pleasant, states in her answer, that she never witnessed but one instrument of writing executed by her father; that this was done when her brother John was about going to Rockingham to reclaim the boy Wesley; that she does not know, nor ever did know, the contents of it; but that when she attested it, she was told by the parties that it was an instrument to authorize John to bring home the boy; and that she has no reason to believe, nor does she believe, that her sister’s name was mentioned in the instrument.
 

 The defendants, James and William, say, that after the death of their father, the boy Wesley ran away; that they found him in the employment of one William Warren; took him home, and now claim him as part of their father’s es
 
 *156
 
 tate. The defendant, William, admits that after he heard ^at pla-iiitiN'set up title to the slave, he was solicitous to know under what instrument such title was set up; and, in order to find it out, if he could,
 
 jocosely
 
 proposed to Martha Griffin, the plaintiff’s daughter, not to give her §500, if she would deliver the bill of sale to him, but to get it from her mother, and they would go halves in the negro. He adds that it is absurd to suppose that he could, in earnest, have made such a proposition as that stated in the bill, as he is personally interested in only the one eleventh undivided part of said slave.
 

 All the defendants severally swear that they do not know what became of the instrument, whatever it might be, which was executed unto John Pleasant; say that they suppose it jnust have been long since lost, as not being deemed of value; deny that any of them have it, or have intentionally destroyed it; state that their father lived twenty years alter its .execution; that during all that time the plaintiff never set up any title to the negro, nor asked for any conveyance of the title from their father; that
 
 he
 
 during all that time claimed, held and possessed the negro as his own; that he occasionally lent the use of the negro t.o his other children as they needed it, and that the negro -was in his possession up to the day of his death. They deny any gift or conveyance from their father to
 
 the
 
 plaintiff by parol or otherwise.
 

 To these answers, a general replication was entered, and the parties having completed their proofs, removed the cause by consent to this court for a hearing — where it has been heard accordingly.
 

 The case made by the bill is not a plain case for relief. The gravamen of it is, that the defendants have withhold-en or destroyed a deed, whereby the negro Wesley was conveyed either directly to the plaintiff, then the wife of William Griffin, or to the defendant John, in trust, for her sole and separate use. If a deed of the former character were made, then the entire legal interest passed thereby to the plaintiff’s husband, and
 
 she
 
 has no right to require the surrender of the deed; or, if it be destroyed, a conveyance of the title to her. But if we are to understand the bill as
 
 *157
 
 charging that a conveyance of the negro was made to the defendant John, in trust for the plaintiff as though she were a
 
 feme sole,
 
 it is to be seen whether this charge is established by proofs. Were the controversy solely between the plaintiff and the defendant John, perhaps we should find less difficulty in coming to a conclusion. His deed of the 20th September, 1836, has been exhibited. It recites that in the lifetime of his father, William Pleasant, Sen., the said William executed to him a good and lawful right to a negro boy Wesley, for the use and benefit of his sister Lucy, then the wife of William Griffin, and declares that, in order to carry into execution what he knows and believes was the intention of his deceased father, he thereby conveys to the said Lucy, all the right, title and interest in said boy, conveyed to him by his said father. The execution of this instrument is proved by both the subscribing witnesses, who testify that they were present when the plaintiff asked the defendant John to make her a right for the negro man Wesley, which her father had conveyed to him for her benefit; that he answered that if he had known that she wanted such a conveyance, he would have given it to her before; that thereupon she handed to him the instrument, which had been previously prepared, and he read and signed it; and that he further said she ought to have the negro, for his father had made the right to him, in trust for her benefit, with an understanding that 'he would make a right to her at his death. And one of the witnesses adds, that he further said that his father had given him the right, in trust for her; that the chest in which he kept his papers had been broken open, and that he had not seen the writing since. Now, if this testimony is to be credited, and we see no reason why it should not be, then is the explanation, which he has attempted to give of the language of this instrument, exceedingly lame. It may indeed be, that he did not carefully examine, nor fully understand, all the expressions in the instrument; but he cannot pretend that these give a character to the transaction, materially different from the account of it, then related by himself, nor that his signature was procured by misrepresentation or fraud.
 

 
 *158
 
 But he is not the only defendant, and it is not quite clear, declarations, verbal or written, are any evidence against his co-defendants. The bill does not shew that
 
 he
 
 has any common interest with
 
 them.
 
 It does not state what testamentary disposition of this negro was made by the elder William Pleasant, nor is his will exhibited in evidence.. — . But we do receive it as evidence, (though not with full confidence,) because we
 
 infer
 
 from what the defendant William states in his answer about the undivided shares in this negro, that he was bequeathed, either by
 
 express
 
 terms,
 
 or
 
 by general words, to all the testator’s children — or has become theirs by reason of his partial intestacy.
 

 A witness for the plaintiff, John Miles, testifies that, since
 
 this suit was pending,
 
 he heard the defendant John sayj that Lucy had had the negro in possession, and that, if she did not recover, he could, and she should have him; and afterwards heard him say, that
 
 “
 
 he had a bill of sale, or some writing conveying the title, or
 
 to go after him."
 
 Nothing can shew more clearly the danger of relying too confidently on the accuracy, with which witnesses give the tenor of casual conversations, than the deposition of this witness.— Every thing seems to substantiate
 
 the allegation of a writing,
 
 conveying the title of the negro to John, except the few last words or
 
 “ to go after him."
 
 If John said
 
 this,
 
 it was consistent with what he has sworn.
 

 George Smith is introduced by the plaintiff, to testify to a conversation which he had with the defendant William, when returning with him from the April Term, 1837, of Caswell County Court. In consequence of the accidental omission of some very material words in the deposition, we cannot be certain that we have collected the meaning of the witness. We understand him to say, that, in this conversation, William stated, as a fact, that his father, after John’s return with the negro from Rockingham, conveyed the right of the negro to John, in trust for the plaintiff; but the deposition will also admit of the sense, that he stated that it was alleged that his father so conveyed the negro. But we place no reliance on this testimony. Independently of the ambiguity of the deposition, the witness is shewn to be unworthy o
 
 *159
 
 credit; and it can scarcely be deemed possible, that, after the defendant, William had taken the negro from the plaintiff, as part of his father’s estate; after he had been sued for the act, had undertaken to justify it by averring that the negro was part of this estate, and but a few days before he put in the present answer on oath, he should have declared that it was not a part of that estate, but belonged to the plaintiff. We either misunderstand the witness, or he misunderstood or misrepresented the defendant.
 

 The main reliance of the plaintiff, for the support of her case, is on the testimony of Margaret Warren and Martha Griffin. The former, without any explanation of the circumstances leading to the conversation, neatly and roundly states that, about a year before old Mr. Pleasant died, she heard him say, no other person being present, that he had given John a bill of sale of Wesley for Lucy; but what had been done with, it he did not know. Martha Griffin, who is the plaintiff’s daughter, deposes that in July, 1836, very shortly before her grandfather’s death, she heard him say, that he intended soon to make his will, and then his sons, with whose management he seemed dissatisfied, should see how he would dispose of his property, remarking that Wesley belonged to her mother, for he had, several years before, given John a bill of sale of him in trust for her mother’s benefit, conditioned to make her a good title after his death; that she has frequently heard her grandfather say, that Wesley belonged to her mother
 
 ajler his death;
 
 and has frequently heard her uncle John say, that he had had a bill of sale of Wesley, for her mother’s benefit; that the bill of sale was in his chest; that the lock of his chest was injured; that he did not know whether the bill of sale was there, but that he would make search for it; that her uncle William, since her grandfather’s death, asked her whether her mother had found it; and stated that he would give her five hundred dollars, which was more than she could get from her grandfather’s estate; that she has heard her aunt Dolly say, that there was a bill of sale, to which she was one of the subscribing witnesses, and
 
 Brice Collins the other,
 
 and that if they should take her to the Court House, she would swear it was sham-work; and further, that she was-
 
 *160
 
 at her grandfather’s, in 1829, when her uncle James retumfrom the West, and was looking over John’s papers, and he said
 
 “
 
 there is a bill of sale for Wesley.”
 

 Now, upon this testimony, if it were unimpeachable and uncontradicted, and unexplained, it would be difficult for the plaintiff to get a decree. The bill, in the point of view, wherein we are now regarding it, charges a conveyance
 
 of the slave
 
 to have been made to John, for the sole and separate use of the plaintiff, then the wife of William Griffin , — such a coirveyance as passed the entire legal interest to him> and secured the whole beneficial interest to her, as though she were a
 
 feme sole;
 
 and alleges this to have been done by way of consummating or perfecting an invalid gift to her by parol theretofore made. Does
 
 this
 
 testimony shew such a gift? Ann Warren’s statement is of a conveyance to John, simply in trust for the plaintiff. Even the recital in John’s deed to her is of such a conveyance. Now, if this were the purport of the deed, its operation would be to vest the whole beneficial interest in the late William Griffin. To prevent
 
 his
 
 taking, there must have been terms in the instrument to
 
 exclude
 
 him. But the residue of this testimony shews, or tends to shew, a conveyance, not immediately in trust for the plaintiff, whether exclusive of her husband or not, but upon a trust for her
 
 after her father's death.
 
 Such certainly seems to be the result of Martha Griffin’s representation on the subject. This would be a trust variant from that stated in the bill.
 

 But this testimony is neither unimpeached nor uncontradicted. The witnesses Ann Warren and Martha Griffin, we are obliged to say, are shewn to be persons of such tainted character, that, if their testimony be not altogether undeserving of credit, it is to be received with much caution. It comes in conflict, too, with the answers of at least eight defendants, who must have been cognizant of such a conveyance, if it had been made, and who nevertheless on oath deny it. But besides, there were twenty years from the date of this pretended conveyance, until the death of the elder William Pleasant — and eleven of these after the plaintiff became a widow, and resided in her father’s neighbourhood—
 
 *161
 
 and during all this time, he used, enjoyed, and claimed the negro as his own. The testimony of William Bigelow and John Yaughan indisputably establishes this. No claim of any title is, in the miean time, set up by the plaintiff. On the
 
 4th
 
 of July, 1836, he entered into a negotiation with Bigelow for a sale of Wesley; and this was only broken off by his death. We hear of no inquiry, in the mean time, after the alleged conveyance, or of any interest expressed in relation to its preservation, or of any effort to perfect it, by having it acknowledged or proved for registration. All this seems to us irreconcilable with the supposition of there being a valid document of title in the plaintiff to property of such great value to one in her straightened circumstances.- It seems to us a little extraordinary that Brice Collins, who is mentioned in Martha Griffin’s deposition as the other subscribing witness with Dolly Pleasant to the alleged deed of old Mr Pleasant, and who has been brought forward as a witness for the plaintiff as to other matters, has not been examined on this point. We cannot, with confidence, pronounce how the facts were; but, upon the whole, we have come to a conclusion, which, while it gives some plausibility to the plaintiff’s claim, denies to it a sufficient foundation. Two respectable witnesses have testified that the mother of Wesley died soon after giving birth to the infant; that the elder Mr. Pleasant offered the infant to any of his children who would undertake to rear it; and that they all declined the offer, except the plaintiff, then the wife of William Griffin. Thus Wesley came into Griffin’s possession, and by Griffin was carried off to Rockingham. In his embarrassments, the boy was seized for debt; and his father-in-law, being advised that the title' was yet in him, sent John to save the property from Griffin’s creditors. He no doubt gave John some instrument in writing, authorizing him to demand the possession of the negro. These transactions, constituting a very important occur-" rence in the family, were of course known to all its members; and it was understood that the object of their father’s interference, of their brother John’s mission, and of the instru-! ment of writing was, to save Wesley for the benefit of their j sister. They knew that Wesley was promised to her, anc£
 
 *162
 
 regarded him as intended for her, and to be hers, at their father’s death. Not long before the old man’s death, it is in proof, by William Miles, a witness of the plaintiff, that
 
 he
 
 spoke of getting Mr. Anderson to write his will, and professed a determination thereby to bequeath Wesley to John and the plaintiff. The notion that the negro was to be Lucy’s, having become connected with the act of the instrument executed to John, and the old man having died without bequeathing the negro as was expected, an effort was then made, in support of this vague claim of the plaintiff, to give it a stronger character, by converting the instrument into a
 
 conveyance
 
 in trust for the plaintiff. A little too much zeal in some of the witnesses. — some inaccuracy of recollection in others — and perhaps a wilful distortion of the facts in one or more of them — have imparted to the effort the plausibility it wears. And even that has derived strength from the want of candor in the defendants, who, it appears very plain to us, have kept back all that they feared might operate in the plaintiff’s favour, which they believed could be suppressed without committing perjury.
 

 But whether this view be correct or not, we do not find ourselves justified in declaring that the plaintiff has established her case; and therefore, we direct the bill to be dismissed — but we do not give the defendants, or any of them, a decree for costs.-
 

 Per Curiam. Decree that the bill be dismissed, but without costs to any party..